# EXHIBIT A

# EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RMFC**
Abran E. Vigil
Nevada Bar No. 7548
Timothy R. Mulliner
Nevada Bar No. 10692
BALLARD SPAHR LLP
100 N. City Parkway, Suite 1750
Las Vegas, NV 89106
Telephone: (702) 471-7000
Facsimile: (702) 471-7070
Email: VigilA@ballardspahr.com
Email: MullinerT@ballardspahr.com

*Attorneys for Defendants*

Ballard Spahr LLP
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106-4617

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| PLAYERS NETWORK, INC., a Nevada corporation, | Case No.: A-14-693908-B |
| Plaintiff, | Dept. No.: XXIX |
| vs. | |
| COMCAST CORPORATION, a Pennsylvania corporation, now known as COMCAST HOLDINGS CORPORATION; COMCAST PROGRAMMING DEVELOPMENT, INC., a Delaware corporation; COMCAST CABLE COMMUNICATIONS, LLC, a Delaware limited liability company; ADVANCED INFORMATION SYSTEMS, INC., a Nevada corporation, and DOES 1-50, | |
| Defendants. | |

## <u>NOTICE OF FILING OF NOTICE OF REMOVAL</u>

PLEASE TAKE NOTICE that Defendants Comcast Corporation, Comcast Programming Development, Inc., and Comcast Cable Communications, LLC have removed this action to the United States District Court for the District of Nevada. Pursuant to 28 U.S.C. § 1446(d), "the State court shall proceed no further

/ / /

/ / /

DMEAST #18411465 v1

1    unless and until the case is remanded."  A copy of the Notice of Removal is attached

2    as Exhibit A.

3                                              BALLARD SPAHR LLP

4

     February 13, 2014                         By: /s/ Timothy R. Mulliner
5                                                   Abran E. Vigil
                                                    Nevada Bar No. 7548
6                                                   Timothy R. Mulliner
                                                    Nevada Bar No. 10692
7                                                   100 North City Parkway, Suite 1750
                                                    Las Vegas, NV  89106
8
                                                    *Attorneys for Defendants*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
100 North City Parkway, Suite 1750
Las Vegas, Nevada 89106-4617

2

1

## CERTIFICATE OF SERVICE

I hereby certify that, on the 13th day of February, 2014 and pursuant to N.R.C.P. 5(b), I served a true and correct copy of the foregoing **Notice of Filing of Notice of Removal** via U.S. Mail, postage prepaid and addressed to the following:

Barney C. Ales
BARNEY C. ALES, LTD.
P.O. Box 20563
Las Vegas, NV 89112

Barney C. Ales
BARNEY C. ALES, LTD.
222 Guidance Ridge Ct.
Henderson, NV 89012

/s/ Timothy R. Mulliner
An employee of BALLARD SPAHR LLP

Electronically Filed
01/20/2014 06:15:51 PM
01/20/2014 06:15:51 PM

*[signature]*

**CLERK OF THE COURT**

1   BARNEY C. ALES, LTD.
    Barney C. Ales, Esq.
2   Nevada Bar No. 0127
    Mailing Address:
3   PO Box 20563
    Las Vegas, NV 89112
4   222 Guidance Ridge Court
    Henderson, NV 89012
5   (702) 998-9576
6   attorneyales@gmail.com
    Attorneys for Plaintiff
7

8              **DISTRICT COURT OF NEVADA**

9              **CLARK COUNTY, NEVADA**

10

11   PLAYERS NETWORK, INC., a Nevada
12   Corporation;                          Case No.: A-14-693908-B

13              Plaintiff,                  Dept. No.: XXIX

14   vs.

15   COMCAST CORPORATION, a Pennsylvania        **AMENDED COMPLAINT**
     corporation, now known as COMCAST
16   HOLDINGS CORPORATION; COMCAST          **Business Court Requested.**
     PROGRAMMING DEVELOPMENT, INC. a
17   Delaware corporation; COMCAST CABLE     **Arbitration Exemption Claimed:**
     COMMUNICATIONS, LLC, a Delaware         **Declaratory Relief Requested**
18   limited liability company; ADVANCED
     INFORMATION SYSTEMS, INC., a Nevada
19   corporation; and, DOES 1-50;

20              Defendants.

21

22          Plaintiff, Players Network, Inc., by and through its attorney Barney C. Ales, Esq., of

23   BARNEY C. ALES, LTD., and files this Amended Complaint against Defendants above named

24   and alleges as follows:

25              **PARTIES, JURISDICTION AND VENUE**

26       1.      Plaintiff, Players Network, Inc. ("Players Network") now is, and at all relevant

27

28

1    times was, a Nevada corporation, organized and existing under the laws of the State of Nevada,

2    and transacting business relevant to this Action in the County of Clark, State of Nevada.

3         2.    Players Network is informed and believes, and based on that information and

4    belief, alleges that Defendant, Comcast Corporation, which is now known as Comcast Holdings

5    Corporation ("Comcast") now is, and at all relevant times was, a Pennsylvania corporation,

6    organized and existing under the laws of the State of Pennsylvania, and has transacted business

7    relevant to this Action in the County of Clark, State of Nevada.

8

9         3.    Players Network is informed and believes, and based on that information and

10   belief, alleges that Defendant, Comcast Programming Development, Inc., ("Comcast

11   Programming") now is, and at all relevant times was, a Delaware corporation, which is and was a

12   wholly owned subsidiary of Comcast, organized and existing under the laws of the State of

13   Delaware, and has transacted business relevant to this Action in the County of Clark, State of

14   Nevada.

15

16        4.    Players Network is informed and believes, and based on that information and

17   belief, alleges that Defendant, Comcast Cable Communications, LLC, ("Comcast Cable") now

18   is, and at all relevant times was, a Delaware limited liability company, and successor in interest

19   to Comcast Programming, which is and was also a wholly owned subsidiary of Comcast,

20   organized and existing under the laws of the State of Delaware, and has transacted business

21   relevant to this Action in the County of Clark, State of Nevada.

22

23        5.    Players Network is informed and believes, and based on that information and

24   belief, alleges that Comcast dominates and controls Comcast Programming and Comcast Cable,

25   and as such, is the alter ego of and responsible for the debts and liabilities of Comcast

26   Programming and Comcast Cable, which is hereinafter collectively referred to as the "Comcast

27   Defendants."

28

6.      Players Network is informed and believes, and based on that information and belief, alleges that Defendant, Advanced Information Systems, Inc., ("AIS") now is, and at all relevant times was, a Nevada corporation, organized and existing under the laws of the State of Nevada, and has transacted business relevant to this Action in the County of Clark, State of Nevada.

7.      That the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 50, inclusive, are unknown to Players Network at this time and Players Network, therefore, sues said Defendants by such fictitious names. Players Network is informed and believes and therefore alleges, that each of the Defendants designated herein as "Doe" are responsible in some manner for the events and happenings referred to and caused damages proximately to Players Network as herein alleged. Defendants DOES are individuals, associations, corporations, partnerships, or other entities which may have in some way caused, contributed or were responsible for Players Network's damages as herein alleged.

8.      The unlawful and improper acts and omissions as alleged herein have caused Players Network to suffer harm within the County of Clark, State of Nevada.

9.      This court has jurisdiction of this Action pursuant to NRS 14.065.

### GENERAL ALLEGATIONS

10.      Mark Bradley ("Bradley") now is, and at all relevant times was, the Chief Executive Officer of Players Network.

11.      Bradley created Players Network as a start-up business that produced and sold videos to the major hotels for viewing by hotel guests and its patrons; and, the videos were viewed in the hotel rooms, which were wired so the program was distributed from a central point in each hotel.

3

12.     As the technology advanced, Bradley moved Players Network into Pay Per View Cable Television; and, in moving into the Pay Per View platform, Bradley and his company, Player Network, developed and retained a complete movie production staff capable of filming most any type of content in and around the Las Vegas area, which included documentaries; behind the scenes and entertainment news about the gaming industry, celebrities and the Las Vegas nightlife; professional poker players; gaming instruction; and, interviews of entertainers and restaurateurs.

13.     Based on his extensive background and experience, Bradley built Players Network into a public company with a reputation for creating and managing programming for video on demand with an emphasis on programming related to the Las Vegas area and its life style as well as highlighting the gaming industry and its players.

14.     Because of the experience and reputation of Bradley and that of Players Network, Peter Heumiller ("Heumiller") of Comcast contacted Bradley in 2004 and proposed a business arrangement.

15.     At the time Heumiller approached Bradley, Comcast had developed a successful business plan and model that involved licensing videos and then broadcasting short clips and portions of those videos to act as teasers with the intent to sell the videos and related merchandise to Comcast subscribers and viewers of their programming.  Heumiller touted the success achieved by Comcast's "Exercise TV" and the sales of fitness videos and related merchandise that were broadcast and disseminated on Comcast's "Exercise TV" channel.

16.     Heumiller was initially interested in obtaining videos from Players Network pursuant to a licensing fee; and, Players Network provided videos to Comcast pursuant to that arrangement for a beta test that lasted approximately six (6) months during which time there was significant interest by Comcast subscribers and high number of viewers of the programming; and

accordingly, the beta test was considered very successful.

17.     After establishing a relationship with Bradley and Players Network in Las Vegas, and after completing the beta test, Heumiller did not want to continue to license video from PNTV. Huemiller wanted a larger relationship with PNTV.

18.     Heumiller wanted to develop a channel devoted to gaming and the gaming lifestyle because with the development of such a channel, Comcast could obtain more customers for its digital service as well as retain more of its existing customers thereby increasing Comcast's revenue with subscription service.

19.     Heumiller wanted Bradley and his company, Players Network, to build out the gaming channel for Comcast because it was recognized that Bradley and Players Network had access to people in Las Vegas that set Players Network apart from other companies.

20.     Players Network's expertise was in the production of content and Comcast's expertise was in the distribution of content; and, Bradley and Heumiller agreed that in the development of the new Las Vegas/Gaming channel, each party should focus on and do what they each do best.

21.     Bradley explained that if a gaming channel was to be built by Players Network, then it had to own the channel, which would be distributed by Comcast; and, that the parties would go into business together on a long term basis.

22.     Heumiller was agreeable to having Players Network build and own a gaming channel that would be distributed by Comcast, and going into business with Players Network on a long term basis.

23.     Bradley and Heumiller discussed the development of dynamic ad insertion and that the technology would be functional within twenty-four (24) months, and as such, that Players Network would need assistance in getting sponsors and advertisers for the new Las

Vegas/Gaming channel to be developed by Players Network.

24.     Heumiller and others at Comcast, represented to Bradley and others at Players Network that Comcast through its wholly owned advertising business, Spotlight, and other connections, had previously assisted in getting sponsors and advertisers for their relatively new channel, "Exercise TV."

25.     Heumiller and others at Comcast, represented to Bradley and others at Players Network that Comcast through its wholly owned advertising business, Spotlight, and other connections, would likewise assist Players Network in getting sponsors and advertisers for the new gaming channel to be developed by Players Network.

26.     Heumiller and others at Comcast, represented to Bradley and others at Players Network that the sponsors and advertisers that Comcast and Spotlight had a relationship with could help with production costs and their products could be "baked into the programming."

27.     The assurances made that Comcast through its wholly owned advertising business, Spotlight, and other connections, would assist Players Network in getting sponsors and advertisers for the new gaming channel to be developed by Players Network were essential to Bradley's decision to proceed with developing the gaming channel and entering into a long term contractual relationship with Comcast.

28.     In 2005, Bradley had requested the assistance of Michael Berk, President of Programing at Players Network, who was an expert in programming, and he attended meetings with Heumiller, and others, to discuss going forward with Comcast and development of the new gaming channel.

29.     Heumiller delegated to Tara Maitra ("Maitra") much of the contractual negotiations that occurred between Comcast Defendants and Players Network.

30.     Heumiller and others at Comcast Defendants, including Maitra, were the agents,

servants and employees of Comcast, and in making the representations described herein were acting in the scope of their authority as such agent, servant and employee with the knowledge, permission and consent of Comcast.

31.     The conduct of Heumiller and others at Comcast, including Maitra, as alleged herein, was done intentionally, recklessly, and/or negligently.

32.     By September 30, 2005 an agreement (which is hereinafter referred to as the "Contract") had been drafted that was ready for signature; and, it was signed by Bradley on behalf of Players Network on that day.

33.     Prior to Bradley's signature on the Contract, the parties had approved of a press release to be disseminated that would announce that Comcast and Players Network had formed a partnership for the development of a new channel devoted to gaming and the Las Vegas life style.

34.     In signing the Contract, Bradley relied on the above-described representations of Heumiller and others.

35.     Comcast's subsidiary, Comcast Programming, signed the Contract on October 5, 2005, which was timed with said press release.

36.     The Contract had an effective date of November 1, 2005, and had a ten (10) year term.

37.     Based on the Contract and the promises made by Comcast Defendants related to the Contract, Players Network was over time able to raise and invest in excess of $15,000,000.00 to launch as well as deliver services and programming content for the new gaming channel for Comcast.

38.     Pursuant to the Contract, Players Network provided to Comcast Defendants programming consisting of gaming-centric entertainment, information lifestyle and commerce

content for distribution and broadcast.

39.    The amount of programming to be provided by Players Network that was to be stored and distributed and broadcast by Comcast was six (6) hours per month in the first year of the Contract, and was to increase by twenty percent (20%) each year; however, Comcast never provided sufficient storage to broadcast and distribute the agreed to six (6) hours per month during the first year of the Contract, and never provided expanded hours in compliance with the Contract.

40.    With Comcast having subscribers in excess of 22,000,000 and with Comcast distributing and broadcasting Players Network's programming in compliance with the Contract, Players Network would have also benefited by selling videos and merchandise as per Comcast's business plan carried out for Exercise TV.

41.    Moreover, once the technology of dynamic ad insertion became perfected and fully functional, Players Network would benefit from additional advertising revenue and the value of its gaming channel would become significantly enhanced.

42.    Comcast Defendants also expected the value of Players Network would grow exponentially as it obtained the right to purchase forty percent (40%) of Players Network pursuant to the terms of the Contract.

43.    From 2009 through 2011, Players Network made repeatedly inquiries of Comcast Defendants about the progress of the technology of dynamic ad insertion and when they could begin attaching advertising to the programs produced by Players Network that were provided to Comcast.

44.    Comcast Defendants repeatedly responded to the inquiries made by Players Network and represented the technology of dynamic ad insertion for commercial use did not yet exist.

45.     In 2009 Comcast announced exclusive talks for the purchase NBC and Universal Studios, and thereafter worked toward the purchase of NBC and Universal Studios; but, the Federal government through the Justice Department, the Securities and Exchange Commission, the Federal Trade Commission, and the Federal Communications Commission ("FCC") was concerned that by purchasing NBC and Universal Studios, Comcast would become so big and powerful that it could dictate the terms of usages not only to its subscribers and customers, but to other smaller channels such as Players Network with whom they were under contract. Accordingly, Comcast entered into a Consent Decree with the FCC that permitted the purchase to proceed on the condition that Comcast would not limit access or discriminate against either subscribers, consumers or other channels.

46.     On or about April 23, 2010, Players Network entered into a consultation agreement with Defendant, AIS, which was to provide assistance to Players Network that would also facilitate its contractual relationship with Comcast Defendants.

47.     Contrary to the representations made by Comcast Defendants to Players Network, they had perfected middleware technology that allowed for dynamic ad insertion and had begun using it on their own programming that was distributed and broadcast on their own channels.

48.     Furthermore, and contrary to the promises Comcast made to FCC, Comcast did discriminate against smaller channels such as Players Network, which is in violation of the Consent Decree.

49.     Moreover, Comcast Defendants did not increase the distribution and broadcast of programming provided to it by Players Network by twenty percent (20%) per year as required by the Contract.

50.     Instead of complying with the obligations set forth in the Contract and the Consent Decree, Comcast Defendants embarked on an improper course of conduct, which has

buried the gaming channel, "Vegas On Demand," that Players Network developed in reliance on the Contract, making it very difficult for Comcast subscribers to locate and view the programming created by Players Network that it provided to Comcast Defendants for distribution and broadcast.

51. As a result of the acts and omissions of Comcast, and that of Comcast Programming and Comcast Cable, Players Network has been substantially harmed and the value of its gaming channel, "Vegas On Demand," has not grown has it should have and as was expected by the parties in entering into the Contract.

52. The conduct of Comcast Defendants, as alleged herein, was done intentionally, recklessly, and/or negligently.

53. It has become necessary for Players Network to retain the services of attorneys to bring this action and to enforce the rights of Players Network; and accordingly, Players Network is entitled to recover its reasonable attorneys' fees and costs incurred herein as an additional item of its damages.

## FIRST CAUSE OF ACTION

54. Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

55. Players Network performed all the conditions and/or obligations required of it pursuant to the Contract.

56. Comcast Defendants failed to perform their duties and obligations required by the Contract.

57. Comcast Defendants breached the Contract.

58. As a direct and proximate result of the breach of the Contract, Players Network has been damaged in an amount in excess of $150,000,000.00, the exact amount which will be

10

1    the subject of proof at the time of trial.

2                          **SECOND CAUSE OF ACTION**

3          59.    Players Network repeats, realleges and incorporates by reference all of the above
4
     paragraphs of this Amended Complaint as though fully set forth herein.
5
           60.    The Contract referred to above was contractual and, as such, there existed an
6
     implied in law a term imposing an obligation of good faith and fair dealing.  Said term obligated
7
8    Comcast Defendants to refrain from taking any action which would otherwise interfere with the

9    lawful and legal rights of Players Network.  Further, said term required that Comcast Defendants

10   to refrain from carrying out any acts which would cause hardship or harm to Players Network.

11         61.    Comcast Defendants have breached the covenant of good faith and fair dealing
12
     implied in the Contract.
13
           62.    As a direct and proximate cause of the breach of the covenant of good faith and
14
15   fair dealing implied in the Contract, Players Network has been damaged in an amount in excess

16   of $150,000,000.00, the total amount of which cannot yet be fixed but will be the subject of

17   proof at the time of trial.

18                           **THIRD CAUSE OF ACTION**

19         63.    Players Network repeats, realleges and incorporates by reference all of the above
20
     paragraphs of this Amended Complaint as though fully set forth herein.
21
           64.    In entering into the Contract the Comcast Defendants owed Players Network
22
23   fiduciary duties to act with utmost loyalty and fidelity.

24         65.    Comcast Defendants breached their fiduciary duties they owed to Players
25
     Network.
26
           66.    As a direct and proximate cause of the breach of the covenant of good faith and
27
     fair dealing implied in the Contract, Players Network has been damaged in an amount in excess
28

                                         11

of $150,000,000.00, the total amount of which cannot yet be fixed but will be the subject of proof at the time of trial.

67.    The conduct of Comcast Defendants was done fraudulently, with malice and oppression to gain an unfair advantage over Players Network, or with total disregard of the rights of Players Network, and with knowledge of the substantial certainty that Players Network would suffer harm, thereby justifying an award of punitive damages.

## FOURTH CAUSE OF ACTION

68.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

69.    In entering the Contract the Comcast Defendant and Players Network had a special relationship of trust and confidence and, as such, there existed a duty implied in law a term imposing an obligation of utmost good faith and fair dealing. Said term obligated Comcast Defendants to refrain from taking any action which would otherwise interfere with the lawful and legal rights of Players Network. Further, said term required the Comcast Defendants to refrain from carrying out any acts which would cause hardship or harm to Players Network.

70.    Comcast Defendants have tortiously breached the covenant of good faith and fair dealing implied in the Contract.

71.    As a direct and proximate cause of the breach of the covenant of good faith and fair dealing implied in the Contract, Players Network has been damaged in an amount in excess of $150,000,000.00, the total amount of which cannot yet be fixed but will be the subject of proof at the time of trial.

72.    The conduct of Comcast Defendants was done fraudulently, with malice and oppression to gain an unfair advantage over Players Network, or with total disregard of the rights of Players Network, and with knowledge of the substantial certainty that Players Network would

suffer harm, thereby justifying an award of punitive damages.

## FIFTH CAUSE OF ACTION

73.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

74.    Players Network relied on the above described misrepresentations made by Comcast Defendants, by and through its employees, agents and/or representatives, which were made to induce and did induce, Players Network to enter into Contract, and to perform pursuant thereto.

75.    At all times relevant hereto, and with full knowledge of all the facts in connection with or relating to said misrepresentations of its employees, agents and/or representatives, Comcast duly ratified and confirmed in all respects, said misrepresentations; and thus, the liability of its employees, agents and/or representatives of the Comcast Defendants is imputed to Comcast.

76.    Had Players Network known of the falsity and misleading nature of the above described misrepresentations, Players Network would not have entered into the Contract and performed the obligations required thereby.

77.    That as a direct and proximate cause of the wrongful conduct of Comcast Defendants, by and through its employees, agents and/or representatives, Players Network has been damaged in an amount in excess of $150,000,000.00, the total amount of which cannot yet be fixed, and thus, will be the subject of proof at the time of trial.

78.    The conduct of Comcast Defendants was done fraudulently, with malice and oppression to gain an unfair advantage over Players Network, or with total disregard of the rights of Players Network, and with knowledge of the substantial certainty that Players Network would suffer harm, thereby justifying an award of punitive damages.

13

**SIXTH CAUSE OF ACTION**

79.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

80.    Players Network is informed and believes, and based thereon alleges that Comcast Defendants have interfered with Players Network's rights of prospective economic gain or advantage.

81.    As a direct and proximate cause of the wrongful conduct of Comcast Defendants, Players Network has been damaged in an amount in excess of $150,000,000.00, the total amount of which cannot yet be fixed, and thus, will be the subject of proof at the time of trial.

**SEVENTH CAUSE OF ACTION**

82.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

83.    Players Network was an intended third party beneficiary of the terms of the Consent Decree between Comcast and FCC.

84.    Comcast violated and breached the terms and conditions of the Consent Decree.

85.    As a direct and proximate result of the breach of the Consent Decree, Players Network has been damaged in an amount in excess of $150,000,000.00, the exact amount which will be the subject of proof at the time of trial.

**EIGHTH CAUSE OF ACTION**

86.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

87.    A dispute now exists between Players Network and Comcast Defendant as to the rights and obligations of those parties concerning the above mentioned allegations.  Therefore under N.R.S. 30.010, et seq., Players Network is entitled to have this Court enter a declaratory

14

judgment setting forth the respective rights, duties and obligations of the parties hereto concerning said allegations.

**NINTH CAUSE OF ACTION**

88.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

89.    Players Network performed all the conditions and/or obligations required of it pursuant to its contract with AIS.

90.    AIS failed to perform its duties and obligations required by its contract with Players Network.

91.    AIS breached its contract with Players Network.

92.    As a direct and proximate result of AIS's breach of its contract with Players Network, Players Network has been damaged in an amount in excess of $10,000.00, the exact amount which will be the subject of proof at the time of trial.

**TENTH CAUSE OF ACTION**

93.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

94.    The contract between Players Network and AIS referred to above contained an implied in law a term imposing an obligation of good faith and fair dealing. Said term obligated AIS to refrain from taking any action which would otherwise interfere with the lawful and legal rights of Players Network. Further, said term required that AIS to refrain from carrying out any acts which would cause hardship or harm to Players Network.

95.    AIS have breached the covenant of good faith and fair dealing implied in the Contract.

96.    As a direct and proximate cause of the breach of the covenant of good faith and

15

fair dealing implied in the contract between Players Network and AIS, Players Network has been damaged in an amount in excess of $10,000.00, the total amount of which cannot yet be fixed but will be the subject of proof at the time of trial.

### ELEVENTH CAUSE OF ACTION

97.     Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

98.     Players Network is informed and believes, and based thereon alleges that AIS has interfered with Players Network's rights of prospective economic gain or advantage.

99.     As a direct and proximate cause of the wrongful conduct of AIS, Players Network has been damaged in an amount in excess of $10,000.00, the total amount of which cannot yet be fixed, and thus, will be the subject of proof at the time of trial.

### TWELFTH CAUSE OF ACTION

100.    Players Network repeats, realleges and incorporates by reference all of the above paragraphs of this Amended Complaint as though fully set forth herein.

101.    A dispute now exists between Players Network and AIS as to the rights and obligations of those parties concerning the above mentioned allegations.  Therefore under N.R.S. 30.010, et seq., Players Network is entitled to have this Court enter a declaratory judgment setting forth the respective rights, duties and obligations of the parties hereto concerning said allegations.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Players Network, Inc., respectfully requests that the Court grant the following relief against the above named Defendants:

(1)     Awarding compensatory damages in excess of $10,000.00 to Players Network;

(2)     Awarding punitive damages in excess of $10,000.00 to Players Network;

16

1

2          (3)     For declaratory judgment setting forth the respective rights, duties and obligations

3    of the parties as well as that Defendants are liable for their wrongful conduct and Players

     Network is entitled to recover damages as a result;

4          (4)     Awarding attorney's fees and costs incurred by Players Network;

5

6          (5)     Assessing the costs and expenses of this action against Defendants; and,

7          (6)     Granting such other and further relief as the Court deems to be just and proper.

8

9                                                    Respectfully submitted,

10                                                   BARNEY C. ALES, LTD.

11

12                                                   Barney C. Ales, Esq.
                                                     Nevada State Bar Number 127
13                                                   Mailing Address:
                                                     PO Box 20563
14                                                   Las Vegas, Nevada  89112
                                                     222 Guidance Ridge Court
15                                                   Henderson, NV  89012
                                                     702-998-9576
16

17                                                   Attorney for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

                                             17