1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

PLAYERS NETWORK, INC.,           )

                                     )

               Plaintiff,      )      Case No.: 2:14-cv-00238-GMN-GWF

   vs.                             )

                                     )      **ORDER**

COMCAST CORPORATION, *et al.*,   )

                                     )

           Defendants.     )

                                     )

Pending before the Court is the Motion to Dismiss (ECF No. 12) filed by Defendants Comcast Corporation, Comcast Programming Development, Inc., and Comcast Cable Communications, LLC (collectively, "Defendants"). Plaintiff Players Network, Inc. ("Plaintiff") filed a Response (ECF No. 17), and Defendants filed a Reply (ECF No. 18). For the reasons discussed below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

### I.    BACKGROUND

This case arises out of a dispute over an agreement (hereinafter "the Agreement") executed between Players Network, Inc. ("Plaintiff") and Comcast Programming Development, Inc. (Am. Compl., ECF No. 1–1). Plaintiff is a Nevada corporation that produces and sells movie and television programming related to "any type of content in and around the Las Vegas area." (*Id.* ¶¶ 1, 11–12). Plaintiff alleges that it was approached by Peter Heumiller ("Heumiller") of Comcast Corporation ("Comcast") with a proposed business arrangement in 2004. (*Id.* ¶ 14). Plaintiff further alleges that Comcast wanted "to develop a channel devoted to gaming and the gaming lifestyle," and wanted Plaintiff "to build out the gaming channel for Comcast." (*Id.* ¶¶ 18–19). Furthermore, Plaintiff alleges that Heumiller and others at Comcast

1  made various representations regarding the development of the new channel, including the use

2  of "dynamic ad assertion" and Comcast's assistance in getting sponsors and advertisers for the

3  new channel. (*Id.* ¶¶ 20–28).  On October 5, 2005, the parties executed the Agreement,

4  memorializing the parties' intentions to develop the new channel. (*Id.* ¶ 35).

5       Plaintiff initially brought the instant suit in the Eighth Judicial District Court for the

6  State of Nevada. (*See* Pet. for Removal, ECF No. 1).  On January 20, 2014, Plaintiff filed an

7  Amended Complaint, alleging eight causes of action against Defendants: (1) breach of contract;

8  (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty;

9  (4) tortious breach of the implied covenant of good faith and fair dealing; (5) fraudulent

10  inducement; (6) tortious interference with prospective economic gain; (7) breach of a consent

11  decree; and (8) declaratory relief. (Am. Compl. ¶¶ 54–87).  Defendants properly removed the

12  case to this Court. (Pet. for Removal, ECF No. 1).

13  **II.    LEGAL STANDARD**

14       Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

15  which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

16  555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

17  which it rests, and although a court must take all factual allegations as true, legal conclusions

18  couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

19  12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

20  of a cause of action will not do." *Id*.

21       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

22  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

23  U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility

24  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

25  that the defendant is liable for the misconduct alleged." *Id*.  This standard "asks for more than a

1   sheer possibility that a defendant has acted unlawfully." *Id*.

2   "Generally, a district court may not consider any material beyond the pleadings in ruling

3   on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

4   1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the

5   complaint may be considered." *Id*.  Similarly, "documents whose contents are alleged in a

6   complaint and whose authenticity no party questions, but which are not physically attached to

7   the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

8   converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14

9   F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of

10  "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

11  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is

12  converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

13  If the court grants a motion to dismiss for failure to state a claim, leave to amend should

14  be granted unless it is clear that the deficiencies of the complaint cannot be cured by

15  amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant

16  to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

17  the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

18  movant, repeated failure to cure deficiencies by amendments previously allowed, undue

19  prejudice to the opposing party by virtue of allowance of the amendment, futility of the

20  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

1

**III.    DISCUSSION[1]**

2

      **a.    Claims Against Comcast Corporation and Comcast Cable Communications**

3

      As a preliminary matter, Defendants assert that Plaintiff's claims against Comcast

4

Corporation and Comcast Cable Communications, LLC fail because neither entity is a party to

5

the Agreement. (Mot. to Dismiss 21:24–25, ECF No. 12).  Supporting this assertion,

6

Defendants cite two provisions of the Agreement. (*Id.* 21:4–10).  First, Section 2 of the

7

Agreement defines "Company" as "Comcast Programming Development, Inc., on behalf of its

8

operating affiliates." (Ex. B to Mot. to Dismiss at 2, ECF No. 12–2).  Second, Section 13(d) of

9

the Agreement provides as follows: "Any recourse of [Plaintiff] against Company shall extend

10

only to Company and not to any of Company's affiliates." (*Id.* at 15).  Finally, the Agreement

11

was executed by Matthew Strauss, Vice President of Comcast Programming Development, Inc.

12

(*Id.* at 16).  On the other hand, Plaintiff asserts that the language, "on behalf of its operating

13

affiliates," includes the operating affiliates as parties to the Agreement. (Response 27:2–11,

14

ECF No. 17).

15

      "Ambiguity exists 'when the provisions in controversy are reasonably or fairly

16

susceptible to different interpretations.'" *Vanderbilt Income and Growth Assoc., LLC v.*

17

*Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996) (quoting *Kaiser Aluminum Corp.*

18

*v. Matheson*, 681 A.2d 392, 395 (Del. 1996)).  "A trial judge must review a contract for

19

ambiguity through the lens of 'what a reasonable person in the position of the parties would

20

have thought the contract meant.'" *Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d

21

393, 396 (Del. 2010) (quoting *Rhone–Poulenc Basic Chem. Co. v. American Motorists Ins. Co.,*

22

616 A.2d 1192, 1197 (Del. 1992)).  If the court finds ambiguity, the court will apply the

23

doctrine of *contra proferentem* and construe ambiguous terms and provisions against the

24

25

---

[1] Neither party disputes that the Agreement contains a choice of law provision, requiring that the Agreement be governed by the laws of Delaware. (*See* Ex. B to Mot. to Dismiss at 15).

1   drafting party. *Id.* at 397.

2       The Court finds ambiguity regarding the definition of "Company" in the Agreement.

3   Whether "on behalf of its operating affiliates" includes operating affiliates as parties to the

4   Agreement is reasonably susceptible to different interpretations.  Therefore, because

5   Defendants drafted the Agreement, the Court construes the provision defining "Company" in

6   favor of the Plaintiff and finds that dismissal of Plaintiff's claims against Comcast Corporation

7   and Comcast Cable Communications, LLC is improper on this basis.

8       **b.    Breach of Contract**

9       Plaintiff's First Cause of Action alleges that "Defendants failed to perform their duties

10  and obligations required by the Contract." (Am. Compl. ¶ 56).  Specifically, Plaintiff alleges

11  that "Defendants did not increase the distribution and broadcast of programming provided to it

12  by Players Network by twenty percent (20%) per year as required by the Contract." (*Id.* ¶ 49).

13      Under Delaware law, for a plaintiff to prevail on a breach of contract claim he or she

14  must demonstrate (1) the existence of a valid contract, (2) the breach of an obligation imposed

15  by that contract, and (3) the resultant damage to the plaintiff. *VLIW Technology, LLC v.*

16  *Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  "It is an elementary canon of contract

17  construction that the intent of the parties must be ascertained from the language of the

18  contract." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992).  After examining

19  the four corners of the document, if ambiguities exist in the language then the court can look at

20  extrinsic evidence to determine the intent of the parties. *Id.*  Moreover, a plaintiff must identify

21  in its complaint "any express contract provision that was breached." *Anderson v. Wachovia*

22  *Mortg. Corp.*, 497 F.Supp.2d 572, 581 (D. Del. 2007) (citations omitted).

23      The parties do not dispute the existence of a valid contract.  Rather, Defendants assert

24  that Plaintiff's breach of contract claim fails because "the Agreement was negotiated by two

25  sophisticated entities and the resulting language is clear and unambiguous: the Agreement is a

1  licensing agreement that authorizes, but does not obligate, Comcast Programming to distribute

2  Players Network's programming." (Mot. to Dismiss 10:3–6).  Moreover, Defendants assert

3  that, "if Comcast Programming fails to carry that programming for six consecutive months,

4  Players Network has only one remedy: termination of the Agreement." (*Id.* 10:6–8).

5      On the other hand, Plaintiff asserts that "a fair and proper reading of the Agreement does

6  not permit it to be construed as a simple agreement to only license Players Network's

7  programming for distribution." (Response 13:27–14:2).  Moreover, Plaintiff asserts that

8  "[w]hen Players Network alleged the obligations of the Agreement have not been complied

9  with by the Comcast Defendants, they should know that Players Network claims they failed to

10  perform the obligations set forth in Section 4 of the Agreement." (*Id.* 14:20–24).

11      As alleged, Plaintiff's Amended Complaint bases its breach of contract claim on

12  Defendants' failure to increase distribution and broadcast of its programming. (Am. Compl. ¶¶

13  39, 49).  However, the Agreement does not place such obligations upon Defendants.  Rather,

14  Defendants' obligations are defined in Section 4 of the Agreement, and none of the obligations

15  set forth in Section 4 require Defendants to increase distribution and broadcast of Plaintiff's

16  programming. (*See* Ex. B to Mot. to Dismiss at 3–4).  Moreover, Plaintiff has failed to identify

17  which obligation(s) of the nine listed in Section 4 was breached.  Therefore, the Court finds that

18  Plaintiff has failed to satisfy the second prong of the breach of contract analysis and will grant

19  Defendants' Motion to Dismiss as to that claim.

20      **c.    Breach of the Implied Covenant of Good Faith and Fair Dealing**

21      Plaintiff's Second Cause of Action alleges that "Defendants have breached the covenant

22  of good faith and fair dealing implied in the Contract." (Am. Compl. ¶ 61).  Under Delaware

23  law, an implied duty of good faith and fair dealing is interwoven into every contract. *Anderson*,

24  497 F. Supp. 2d at 581.  The Delaware Supreme Court

25      "has recognized the occasional necessity of implying contract terms
       to ensure the parties' reasonable expectations are fulfilled. This

1

2

3

4

> quasi-reformation, however, should be [a] rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of ... had they thought to negotiate with respect to that matter may a party invoke the covenant's protections."

5

6

*Wal–Mart Stores, Inc. v. AIG Life Ins. Co.,* 901 A.2d 106, 116 (Del. 2006) (quoting *Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d 434, 442 (Del. 2005)).

7

8

9

10

11

"In order to plead successfully a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Anderson*, 497 F. Supp. 2d at 581-82 (quoting *Fitzgerald v. Cantor,* Civ. A. No. 16297–NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiff asserts that its Amended Complaint alleges three specific implied contractual obligations on Defendants to: (1) promote Plaintiff's programming, (2) utilize "dynamic ad insertion," and (3) provide sufficient storage for Plaintiff's programming. (Response 15:20–17:3).  Plaintiff's first asserted implied contractual obligation—that Defendants promote Plaintiff's programming—fails in light of the express language of the contract.  For example, the preamble of the Agreement "grants to Company rights to exhibit and promote the Channel." (Ex. B to Mot. to Dismiss at 2).  Moreover, Section 7 of the Agreement defines the rights granted to Defendants, which include the right to promote Plaintiff's programming. (*Id.* at 6). Accordingly, the Court cannot find an implied contractual obligation that Defendants promote Plaintiff's programming because it would override express provisions, which merely grant a right to promote Plaintiff's programming. *See Fitzgerald v. Cantor,* 1998 WL 842316 at *1 ("Since a court can only imply a contractual obligation when the express terms of the contract indicate that the parties would have agreed to the obligation had they negotiated the issue, the plaintiff must advance provisions of the agreement that support this finding in order to allege

1    sufficiently a specific implied contractual obligation.") (footnote omitted). *See also Kuroda v.*

2    *SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009) ("[T]he implied covenant cannot be

3    invoked to override express provisions of a contract.").

4         As to Plaintiff's second asserted implied contractual obligation—utilization of "dynamic

5    ad insertion"—the Court finds that Plaintiff has not pled allegations sufficient to support a

6    finding of such utilization as an implied contractual obligation.  Although Plaintiff advances a

7    provision in the agreement referencing middleware technology, this reference alone does not

8    support a finding of an implied contractual obligation that Defendants utilize dynamic ad

9    insertion. (*See* Ex. B to Mot. to Dismiss at 5).  Moreover, although Plaintiff alleges that

10   representations regarding the utilization of dynamic ad insertion were made by Defendants

11   prior to the execution of the Agreement, as discussed more fully below in Section III-f, reliance

12   on representations made prior to the execution of the Agreement are barred by the Agreement's

13   unambiguous integration clause. (*See* Am. Compl. ¶¶ 23–27, 43–44, 47).

14        Regarding Plaintiff's third asserted implied contractual obligation—providing sufficient

15   storage for Plaintiff's programming—the Court finds that Plaintiff has sufficiently alleged facts

16   supporting a breach of the implied covenant of good faith and fair dealing.  First, Plaintiff

17   alleges the provision of storage for its programming as an implied contractual obligation. (*See*

18   Am. Compl. ¶ 39).  Second, Plaintiff alleges a breach of that obligation by Defendants. (*See*

19   *id.*).  Third, Plaintiff alleges resulting damage from the breach. (*See id.* ¶ 62).  Plaintiff also

20   advances specific provisions of the Agreement to support this finding. (Response 16:21–23; Ex.

21   B to Mot. to Dismiss at 8).  Accordingly, the Court concludes that Defendant's Motion to

22   Dismiss on this claim with respect to an implied contractual obligation that Defendants provide

23   storage for Plaintiff's programming fails and must be denied.

24        **d.    Breach of Fiduciary Duty**

25        Plaintiff's Third Cause of Action alleges that Defendants breached their fiduciary duties

1   they owed to Plaintiff. (Am. Compl. ¶ 65).  Under Delaware law, a contract, in itself, does not

2   impose fiduciary duties on the contracting parties. *Satellite Fin. Planning Corp. v. First Nat.*

3   *Bank of Wilmington*, 633 F.Supp. 386, 401 (D. Del. 1986).  However, Plaintiff asserts that "the

4   parties described the Agreement as a partnership agreement at the time of its execution and

5   concurrent therewith they disseminated a joint press release representing they had formed a

6   partnership." (Response 17:10–12).  Moreover, Plaintiff asserts that, "even if the Agreement is

7   not found to constitute a partnership agreement, it could be characterized as a creating a joint

8   venture." (*Id.* 17:23–25).

9        Under Delaware law, a partnership is defined as "the association of 2 or more persons []

10  to carry on as co-owners a business for profit." 6 Del. C. § 15–202(a) (2010).  Furthermore, to

11  establish a joint venture relationship, "there must be (1) a community of interest in the

12  performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary

13  interest in the subject matter, (4) a right to share in the profits, (5) a duty to share in the losses

14  which may be sustained." *Warren v. Goldfinger Bros., Inc.*, 414 A.2d 507, 509 (Del. 1980)

15       Plaintiff's Amended Complaint makes one vague allegation related to a partnership

16  between the parties, alleging that "the parties had approved of a press release to be

17  disseminated that would announce that Comcast and Players Network had formed a

18  partnership." (Am. Compl. ¶ 33).  However, the Amended Complaint does not allege that the

19  parties indeed formed a partnership.  Moreover, the Amended Complaint does not allege that

20  the parties formed a joint venture relationship.  Therefore, the Court finds that Plaintiff has not

21  sufficiently pled a cause of action of breach of fiduciary duty and will grant Defendants'

22  Motion to Dismiss as to that claim.

23       **e.     Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

24       Plaintiff's Fourth Cause of Action alleges that Defendants tortuously breached the

25  implied covenant of good faith and fair dealing. (Am. Compl. ¶ 70).  Defendants assert that

1    Delaware courts have not recognized such a cause of action. (Mot. to Dismiss 15:5–6).

2    Moreover, Defendants assert that Plaintiff's claim fails even under Nevada law "because it

3    requires a 'special relationship' that does not exist here." (*Id.* 15:9–11).

4          Under Nevada law, a tort claim for breach of the implied covenant of good faith and fair

5    dealing is only allowed under "special circumstances." *Premiere Digital Access, Inc. v. Central*

6    *Telephone Co.*, 360 F.Supp.2d 1161, 1165 (D. Nev. 2005) (citing *Cincinnati Microwave, Inc. v.*

7    *Wilson*, 705 F.Supp. 1453, 1456 (D. Nev. 1989). "The tort is generally limited to contractual

8    relationships that involve an unusual element of reliance by one party on the other." *Id.* "These

9    relationships include those found in partnerships, insurance contracts, franchise agreements,

10   and between employers and employees." *Id.*

11         As discussed above, Plaintiff's Amended Complaint does not sufficiently allege a

12   partnership among the parties. Additionally, the Amended Complaint does not allege any other

13   type of special relationship between the parties. Therefore, the Court finds that Plaintiff has not

14   sufficiently pled a cause of action of tortious breach of the implied covenant of good faith and

15   fair dealing and will grant Defendants' Motion to Dismiss as to that claim.

16         **f.      Fraudulent Inducement**

17         Plaintiff's Fifth Cause of Action alleges that Plaintiff relied on misrepresentations made

18   by Defendants, "which were made to induce and did induce," Plaintiff to enter into the

19   Agreement. (Am. Compl. ¶ 74). Specifically, Plaintiff alleges that, before the Agreement was

20   executed, "Heumiller and others at Comcast represented to Bradley and others at Players

21   Network that Comcast through its wholly owned advertising business, Spotlight, and other

22   connections, would likewise assist Players Network in getting sponsors and advertisers for the

23   new gaming channel to be developed by Players Network." (*Id.* ¶ 25). Moreover, Plaintiff

24   alleges that "Heumiller and others at Comcast, represented to Bradley and others at Players

25   Network that the sponsors and advertisers that Comcast and Spotlight had a relationship with

1   could help with production costs and their products could be 'baked into the programming.'"

2   (*Id.* ¶ 26).

3         Defendants assert that Plaintiff's claim fails because the parol evidence rule and the

4   integration clause of the Agreement bar Plaintiff's claim that it was fraudulently induced to

5   enter into the Agreement. (Mot. to Dismiss 15:18–24).  More specifically, Defendants assert

6   that "[i]n the integration clause of the Agreement at issue here, Players Network unequivocally

7   represented that it was entering into the Agreement in reliance only on the terms of the

8   Agreement and not any other representations." (*Id.* 17:13–15).  Section 13(c) of the Agreement

9   contains the integration clause and provides as follows:

10
11   > This Agreement may not be amended nor any provision waived
   > except in writing signed by the parties hereto. This Agreement
12   > contains the full understanding of the parties and supersedes any and
   > all previous agreements between the parties with respect to the
13   > subject matter hereof. Each party acknowledges that is entering into
   > this Agreement in reliance only upon the provisions herein set forth,
14   > and not upon any representation, warranty, covenant, agreement,
   > obligation or other consideration not set forth herein.

15   (Ex. B to Mot. to Dismiss at 15).

16         Under Delaware law, "a party cannot promise, in a clear integration clause of a

17   negotiated agreement, that it will not rely on promises and representations outside of the

18   agreement and then shirk its own bargain in favor of a 'but we did rely on those other

19   representations' fraudulent inducement claim." *Abry Partners V, L.P. v. F & W Acquisition*

20   *LLC*, 891 A.2d 1032, 1057 (Del. Ch. 2006).  However, Delaware courts "have not given effect

21   to so-called merger or integration clauses that do not clearly state that the parties disclaim

22   reliance upon extra-contractual statements." *Id.* at 1058.  Rather, "[t]he integration clause must

23   contain 'language that ... can be said to add up to a clear anti-reliance clause by which the

24   plaintiff has contractually promised that it did not rely upon statements outside the contract's

25   four corners in deciding to sign the contract.'" *Id.* at 1059 (quoting *Kronenberg v. Katz*, 872

1 A.2d 568, 593 (Del. Ch. 2004)).

2       Here, the Court finds that the integration clause in the Agreement contains language that

3 adds up to a clear anti-reliance clause by which Plaintiff has contractually promised that it did

4 not rely upon statements outside the Agreement's four corners in deciding to sign the

5 Agreement.  Accordingly, Plaintiff's reliance on representations made before the execution of

6 the Agreement that are not memorialized within the four corners of the Agreement cannot be

7 used to shirk its own bargain in favor of a "but we did rely on those other representations"

8 fraudulent inducement claim.  Therefore, the Court finds that Plaintiff has not sufficiently pled

9 a cause of action of fraudulent inducement and will grant Defendants' Motion to Dismiss as to

10 that claim.

11              **g.      Tortious Interference with Prospective Economic Advantage**

12       Plaintiff's Sixth Cause of Action alleges that Defendants interfered with Players

13 Network's rights of prospective economic gain or advantage. (Am. Compl.¶ 80).  Under

14 Nevada law, this tort has five elements:

15              (1) a prospective contractual relationship between the plaintiff and a
                third party; (2) the defendant's knowledge of this prospective
16              relationship; (3) the intent to harm the plaintiff by preventing the
                relationship; (4) the absence of privilege or justification by the
17              defendant; and, (5) actual harm to the plaintiff as a result of the
                defendant's conduct.
18

19 *Consol. Generator–Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1255 (Nev. 1998) (per

20 curiam) (quotation omitted).

21       Here, Plaintiff has failed to allege a prospective contractual relationship with a third

22 party.  Moreover, Plaintiff has failed to allege any remaining elements of tortious interference

23 with prospective economic advantage.  Therefore, the Court finds that Plaintiff has not

24 sufficiently pled a cause of action of tortious interference with prospective economic advantage

25 and will grant Defendants' Motion to Dismiss as to that claim.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

    **h.**    **Breach of Consent Decree**

Plaintiff's Seventh Cause of Action alleges that Plaintiff was a third party beneficiary of the terms of a Consent Decree between Defendants and the FCC, and Defendants violated and breached the terms and conditions of the Consent Decree. (Am. Compl. ¶¶ 83–84).  More specifically, Plaintiff alleges:

> 45. In 2009 Comcast announced exclusive talks for the purchase NBC and Universal Studios, and thereafter worked toward the purchase of NBC and Universal Studios; but, the Federal government through the Justice Department, the Securities and Exchange Commission, the Federal Trade Commission, and the Federal Communications Commission ("FCC") was concerned that by purchasing NBC and Universal Studios, Comcast would become so big and powerful that it could dictate the terms of usages not only to its subscribers and customers, but to other smaller channels such as Players Network with whom they were under contract. Accordingly, Comcast entered into a Consent Decree with the FCC that permitted the purchase to proceed on the condition that Comcast would not limit access or discriminate against either subscribers, consumers or other channels.
>
> …
>
> 48. Furthermore, and contrary to the promises Comcast made to FCC, Comcast did discriminate against smaller channels such as Players Network, which is in violation of the Consent Decree.

(*Id.* ¶¶ 45, 48).

Defendants assert that Plaintiff's claim fails because Plaintiff "fails to attach the consent decree, identify its date of execution, or cite a single provision of the document." (Mot. To Dismiss 19:21–22).  Moreover, Defendants assert that "no such consent decree exists."[2] (*Id.* 19:22–23).  However, a motion to dismiss is not the appropriate procedural vehicle to dispute

---

[2] Defendants request the Court to take judicial notice of an FCC website containing documents pertaining to the acquisition. (Mot. to Dismiss n.4, 19:26).  However, the website states that "[t]his page contains an indexed unofficial listing of and electronic links to most materials in this docket." *See* http://transition.fcc.gov/transaction/comcast-nbcu.html.  Because the website provides an unofficial listing, the Court cannot find that the source's accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2).

1  the facts alleged in a complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence &*

2  *Coordination Unit,* 507 U.S. 163, 164 (1993) (noting that, at the motion to dismiss stage of

3  litigation, courts must "accept as true all of the factual allegations in the complaint"); *see also*

4  *Arpin,* 261 F.3d at 925 (noting that "extraneous evidence, [outside the complaint], should not

5  be considered in ruling on a motion to dismiss.").

6        Because Defendants' argument relies on evidence outside Plaintiff's Amended

7  Complaint to challenge the facts alleged in the Amended Complaint, the Court concludes that

8  Defendant's Motion to Dismiss on this claim fails and must be denied.

9        **i.    Declaratory Judgment**

10       Plaintiff's Eighth Cause of Action alleges that Plaintiff "is entitled to have this Court

11  enter a declaratory  judgment setting forth the respective rights, duties and obligations of the

12  parties hereto concerning said allegations." (Am. Compl. ¶ 87).  However, declaratory relief is

13  merely a remedy, not a stand-alone cause of action. *See Antaredjo v. Nationstar Mortg.*, 2:13–

14  cv–1532–JCM–CWH, 2014 WL 298810, at *3 (D. Nev. Jan. 27, 2014); *Nguyen v. Washington

15  Mut. Bank, N.A.*, 2:11–cv–1799–LRH–NJK, 2013 WL 3864110, at *2 (D. Nev. July 24, 2013).

16  Indeed, Plaintiff has also listed declaratory relief as requested relief in its Amended Complaint.

17  (Am. Compl. 18:1–3).  Accordingly, the Court will grant Defendants' Motion to Dismiss as to

18  that claim.

19       **j.    Leave to Amend**

20       Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give

21  leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit "ha[s]

22  held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should

23  grant leave to amend even if no request to amend the pleading was made, unless it determines

24  that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith,*

25  203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.

1    1995)).

2         Of the six claims that the Court has granted Defendants' Motion to Dismiss, the Court

3    finds that only two claims could not possibly be cured by the allegation of other facts.  First, the

4    Court finds that leave to amend Plaintiff's claim of fraudulent inducement would be futile.

5    Second, the Court finds that leave to amend Plaintiff's claim of declaratory judgment would

6    also be futile.  Accordingly, these two claims are dismissed with prejudice.

7         On the other hand, the Court finds that Plaintiff may be able to plead additional facts to

8    support the following causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3)

9    tortious breach of the implied covenant of good faith and fair dealing; and (4) tortious

10   interference with prospective economic advantage.  Accordingly, because the Court finds that

11   Plaintiff may be able to plead additional facts to support these causes of action, the Court will

12   grant Plaintiff leave to file a second amended complaint.

13        Plaintiff shall file its second amended complaint **by Thursday, March 5, 2015**, if it can

14   allege sufficient facts that plausibly establish the following claims against Defendants: (1)

15   breach of contract; (2) breach of fiduciary duty; (3) tortious breach of the implied covenant of

16   good faith and fair dealing; and (4) tortious interference with prospective economic advantage.

17   Failure to file a second amended complaint by this date shall result in the Court dismissing

18   these claims with prejudice, and the case will continue only on Plaintiff's following claims: (1)

19   breach of the implied covenant of good faith and fair dealing; and (2) breach of a consent

20   decree.

21   **IV.    CONCLUSION**

22        **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 12) is

23   **GRANTED in part** and **DENIED in part**.  The following claims are **DISMISSED with**

24   **prejudice**: (1) fraudulent inducement; and (2) declaratory relief.  Additionally, the following

25   claims are dismissed without prejudice with leave to amend: (1) breach of contract; (2) breach

of fiduciary duty; (3) tortious breach of the implied covenant of good faith and fair dealing; and (4) tortious interference with prospective economic advantage.  Moreover, Defendants' Motion to Dismiss is **DENIED with respect to the following claims**: (1) breach of the implied covenant of good faith and fair dealing; and (2) breach of a consent decree.

**IT IS FURTHER ORDERED** that Plaintiff shall file its second amended complaint **by Thursday, March 5, 2015**.  Failure to file a second amended complaint by this date shall result in the Court **DISMISSING** these claims **with prejudice** and the case will continue only on Plaintiff's following claims: (1) breach of the implied covenant of good faith and fair dealing; and (2) breach of a consent decree.

**DATED** this 2nd day of February, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge