1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

PLAYERS NETWORK, INC.,                )
                                       )
5                      Plaintiff,      )        Case No.: 2:14-cv-00238-GMN-GWF
           vs.                         )
6                                      )        **ORDER**
   COMCAST CORPORATION, *et al.*,      )
7                                      )
                    Defendants.        )
8                                      )
   _____ )

9

10          Pending before the Court is the Motion for Summary Judgment, (ECF No. 63), filed by

11   Defendants Comcast Corporation, Comcast Programming Development, Inc., and Comcast

12   Cable Communications, LLC (collectively "Defendants").  Plaintiff Players Network, Inc.

13   ("Plaintiff") filed a Response, (ECF No. 70), and Defendants filed a Reply, (ECF No. 75).  For

14   the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED in**

15   **part** and **DENIED in part**.

16   I.      **BACKGROUND**

17          This case arises out of a dispute over an agreement ("Agreement") executed between

18   Plaintiff and Comcast Programming Development, Inc. (*See* Second Am. Compl. ("SAC"),

19   ECF No. 1-1).  Plaintiff is a Nevada corporation that produces and sells movie and television

20   programming related to "any type of content in and around the Las Vegas area."  Defendants

21   own and operate television channels that broadcast programming content. (*Id.* ¶¶ 6, 13–17);

22   (*see also* Agreement at 2, ECF No. 12-2).  Pursuant to the Agreement, Plaintiff provided

23   "specialty interest programming networks" for Defendants' video-on-demand ("VOD")

24   platform. (Agreement at 2).

25

On November 1, 2005 (the "Effective Date"), Plaintiff and Defendants entered into the Agreement allowing Defendants to show Plaintiff's programming on Defendants' VOD platform. (*Id.*).  Plaintiff's Chief Executive Officer, Mark Bradley ("Bradley"), participated in negotiation of the Agreement and signed it on behalf of Plaintiff. (*Id.* at 16); (Bradley Dep., Ex. 2 to Mot. for Summ. J. ("MSJ") 50:16–20, ECF No. 63-?).

The parties allude to their strained relationship during performance of the Agreement; indeed, Defendants indicate that they attempted to terminate the Agreement early. (MSJ 13:27–14:10).  However, the parties fail to clarify whether the Agreement was terminated or still in effect at the time Plaintiff initiated this case, and Plaintiff does not allege early termination as a basis for its breach of contract claim.  Instead, Plaintiff's claims center on its allegations that the Agreement required Defendants to supply dynamic ad insertion, which the parties refer to as "middleware technology." (*See, e.g.*, SAC ¶¶ 25, 43, 45, 48).  Based upon these allegations, Plaintiff filed its Second Amended Complaint asserting claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) tortious breach of the implied covenant of good faith and fair dealing; (5) tortious interference with prospective economic gain; (6) breach of a consent decree; and (7) fraudulent misrepresentation. (*Id.* ¶¶ 54–87).

On August 11, 2015, the Court granted Defendants' Motion for Judgment on the Pleadings, dismissing with prejudice: (1) Plaintiff's breach of the implied covenant of good faith and fair dealing claim, insomuch as it is premised on an implied contractual obligation that Defendants utilize dynamic ad insertion; (2) breach of fiduciary duty; (3) tortious breach of the implied covenant of good faith and fair dealing; (4) tortious interference with prospective economic advantage; and (5) fraudulent misrepresentation.  (*See* Mot. for J. ("MJP") Order, ECF No. 52).  Defendants filed the instant Motion seeking summary judgment for Plaintiff's

1  remaining causes of action for breach of contract and breach of the implied covenant of good

2  faith and fair dealing. (*See* MSJ 1:20–24, ECF No. 63).

3  ## II.   LEGAL STANDARD

4        The Federal Rules of Civil Procedure provide for summary adjudication when the

5  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

6  affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

7  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

8  may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248

9  (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

10  jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if

11  reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

12  in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

13  Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A

14  principal purpose of summary judgment is "to isolate and dispose of factually unsupported

15  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

16        In determining summary judgment, a court applies a burden-shifting analysis.  "When

17  the party moving for summary judgment would bear the burden of proof at trial, it must come

18  forward with evidence which would entitle it to a directed verdict if the evidence went

19  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

20  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

21  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  In contrast, when the

22  nonmoving party bears the burden of proving the claim or defense, the moving party can meet

23  its burden in two ways: (1) by presenting evidence to negate an essential element of the

24  nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

25  showing sufficient to establish an element essential to that party's case on which that party will

bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.**    **DISCUSSION**

Defendants seek summary judgment on the remaining causes of action: (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing.[1] (*See* MSJ 1:20–24, ECF No. 63).  The Court addresses these claims in turn.

**A.**    **Breach of Contract**

Plaintiff alleges its breach of contract claim pursuant to Sections 4(a), 4(d), 4(e), 4(f),[2] 4(g), 4(h), 4(i), and 7(a)(iii)[3] of the Agreement. (MSJ 16:2–4).  Neither party disputes that the Agreement contains a choice of law provision requiring the laws of Delaware to govern the Agreement.  Under Delaware law, to prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) the breach of an obligation imposed by that contract; and (3) the damage to the plaintiff. *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  "It is an elementary canon of contract construction that the intent of the parties must be ascertained from the language of the contract." *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992).

---

[1] Additionally, Defendants seek summary judgment on Plaintiff's sixth cause of action: breach of a consent decree. (MSJ 29:4–30:3).  Plaintiff does not oppose summary judgment on this claim. (Resp. 2:15–17).  Accordingly, the Court **GRANTS** summary judgment as to Plaintiff's sixth cause of action.

[2]  In its Response to the instant Motion, Plaintiff fails to address its claims concerning Sections 4(a), 4(d), and 4(f).  In neglecting to address these claims, Plaintiff fails to meet its burden to go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.  Moreover, the Ninth Circuit holds that a nonmoving party abandons its claims by not raising them in opposition to the moving party's motion for summary judgment. *See Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005).  Accordingly, the Court finds that Plaintiff has abandoned these claims and **GRANTS** summary judgment on Plaintiff's breach of contract claims with respect to Sections 4(a), 4(d), and 4(f).

[3] Regarding Section 7(a)(iii), Plaintiff contends that the Agreement "provides that [Defendants] were granted the 'exclusive right and license' to 'exhibit, distribute, perform, display, and otherwise make available the [c]hannel,' as well as to '[p]romote the [c]hannel in any manner or media' throughout the United States." (Resp. 19:8–11).  However, the Court already ruled on this matter in a previous Order, (ECF No. 36), holding that Plaintiff cannot base its breach of contract claim on Defendants' failure to increase distribution and broadcast of its programming as "the Agreement does not place such obligations upon Defendants." (Mot. to Dismiss ("MTD") Order 6:11–13, ECF No. 36).  Accordingly, the Court **GRANTS** summary judgment on Plaintiff's breach of contract claims with respect to Section 7(a)(iii).

The Court will address Sections 4(e), 4(g), and 4(h) together, as all three sections relate to "middleware technology," and then will address Section 4(i) concerning regular meetings between the parties.

### 1.    Middleware Technology

At the present stage, Plaintiff asserts under the heading "[Plaintiff] has Breach [sic] the Contract"[4] that Defendants breached Sections 4(e), 4(g), and 4(h) of the Agreement in light of Section 5. (*See* Resp. 20:1–15).  Section 5(b) states "[Plaintiff] will be responsible for the cost to program and the reformatting of its content to communicate with [Defendants'] middleware provider.  Such reformatting costs will be amortized as part of the cost of the adjust gross revenue." (Agreement at 5).

Plaintiff argues that although "middleware" appears nowhere else in the Agreement, Section 5 indicates an understanding by the parties that the Agreement ultimately contemplated use of "middleware technology that allowed for dynamic ad insertion." (SAC ¶ 48).  Sections 4(e), 4(g), and 4(h) state in relevant part that Defendants shall "[a]ssist in developing [c]hannel marketing material," "[a]ssist in discussions regarding major third party advertisers," and "[f]acilitate discussions with Comcast Spotlight." (Agreement at 4).  To this end, Plaintiff points to the "terms 'assist' and 'facilitate' as used in Sections 4(e), 4(g), and 4(h)" to require Defendants to utilize middleware technology.  Plaintiff therefore bases its breach of contract claim for Sections 4(e), 4(g), and 4(h) on Defendants' failure to utilize middleware technology.

However, the Court has already rejected this theory twice before.  First, in the Order granting Defendants' Motion to Dismiss, (ECF No. 36), the Court found that Plaintiff's Amended Complaint had not sufficiently pled allegations to support its breach of the implied covenant of good faith and fair dealing claim, which was solely premised on Defendants'

---

[4] The Court presumes that, consistent with its pleadings, Plaintiff did not intend to assert that it breached the Agreement but rather that *Defendants* breached the Agreement.

failure to utilize dynamic ad insertion as an implied contractual obligation. (MTD Order 8:5–9). As the Court noted, "[a]lthough Plaintiff advances a provision in the agreement referencing middleware technology, this reference alone does not support a finding of an implied contractual obligation that Defendants utilize dynamic ad insertion." (*Id.* 8:6–9). Second, in the Order granting Defendants' Motion for Judgment on the Pleadings, (ECF No. 52), the Court found that "Plaintiff's allegations still fail to establish this claim based upon an implied contractual obligation that Defendants utilize dynamic ad insertion." (MJP Order 4:3–7).

After dismissing this claim twice before, the Court is not persuaded by Plaintiff's unabashed persistence in presenting arguments related to middleware technology under this new guise. Plaintiff premises the bulk of its claims on Defendants' failure to provide middleware technology—a term mentioned only once in the entire Agreement. (*See* Agreement at 5). Plaintiff itself concedes in its SAC that "the [Agreement] did not contain any specific reference to dynamic ad insertion." (SAC ¶ 77). In short, the Court continues to hold that the Agreement created no obligation with respect to middleware technology for dynamic ad insertion between Plaintiff and Defendants. The Court therefore grants summary judgment with respect to breach of Sections 4(e), 4(g), and 4(h) of the Agreement.

## 2.    Regular Meetings

Section 4(i) of the Agreement required Defendants to "[s]chedule and participate in quarterly strategy meetings to discuss on-going marketing strategy and [c]hannel status." (Agreement at 4). Defendants assert that they "held meetings at least once per quarter at which [Plaintiff] was discussed, which is all that Section 4(i) requires." (MSJ 22:26–23:2); (*see* Lev Dep., Ex. 13 to MSJ, 51:11–52:23). Additionally, Defendants state that "it is undisputed that [Defendants] held strategy meetings directly with [Plaintiff], though not required by the plain language of Section 4(i)." (MSJ 23:3–6).

Indeed, the Agreement is devoid of any requirement that meetings must be held *between* Plaintiff and Defendants.  Section 4(i) merely required Defendants to hold quarterly meetings to discuss strategies for Plaintiff. (Agreement at 4).  Defendants did not breach this obligation. (*See* Lev Dep., Ex. 13 to MSJ, 51:11–52:23) (stating that "strategy meetings regarding [Plaintiff] occurred at least quarterly throughout the term of the . . . Agreement").  Moreover, Bradley states in his deposition that "[the meetings] happened sporadically" and they "didn't happen every quarter." (Bradley Dep., Ex. 2 to MSJ, 144:16–24).  Although the meetings did not happen as frequently as Plaintiff would have liked, the meetings nonetheless occurred. Accordingly, the Court grants summary judgment regarding Plaintiff's breach of contract claim.

### B.    Breach of the Implied Covenant of Good Faith and Fair Dealing

Under Delaware law, an implied duty of good faith and fair dealing is interwoven into every contract. *Anderson v. Wachovia Mortg. Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007). The Delaware Supreme Court holds that:

> "the occasional necessity of implying contract terms to ensure the parties' reasonable expectations are fulfilled. This quasi-reformation, however, should be [a] rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of . . . had they thought to negotiate with respect to that matter may a party invoke the covenant's protections."

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 116 (Del. 2006) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)).

To successfully claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show a specific implied contractual obligation, a breach of that obligation, and damages resulting from the breach. *See Anderson*, 497 F. Supp. 2d at 581–82 (quoting *Fitzgerald v. Cantor*, Civ. A. No. 16297–NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10,

1998)).  A court's focus is whether, at the time of contract formation, the parties would have prohibited or permitted the conduct had they contemplated it or thought to negotiate about it. *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998); *Katz v. Oak Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).  Thus, parties are liable for breaching the covenant when their conduct frustrates the "overarching purpose" of the contract by taking advantage of their position to control implementation of the agreement's terms. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

Here, Section 9(a) states that Defendants "shall be responsible for supplying to [Plaintiff] a minimum of six (6) hours of high quality, professionally produced Titles per month . . . provided however that in each year of the Term the number of hours of Titles available per month shall increase by twenty percent (20%)." (Agreement at 8).  In light of this Section, Plaintiff "expected that the [Defendants] would have and/or would provide sufficient storage capacity to accept the amount of programming content [Plaintiff] was required to produce." (SAC ¶¶ 83–84).  Plaintiff therefore alleges that Defendants breached their implied obligation to provide sufficient storage for the programming content that Plaintiff was required to produce. (*Id.* ¶ 85).

In the instant Motion, Defendants dispute that storage of Plaintiff's programming was an implied contractual covenant. (*See* MSJ 27:3–7).  Defendants argue that "the integrated [ ] Agreement fully delineates the scope of the parties' respective responsibilities" and that "[s]toring [Plaintiff's] programming content is simply not among them." (*Id.* 28:4–9).  The Court finds, however, that the Agreement provides the parties with a reasonable expectation that storage would exist for Plaintiff's programming.  Without a means of storage, the overarching purpose of the Agreement—for Plaintiff to "supply a VOD channel and VOD content" to Defendants—is frustrated. (*See* Agreement at 2).

Pursuant to Section 9(a), Plaintiff had a contractual requirement to provide programming to Defendants. (Agreement at 8).  Moreover, Section 9(a) required Plaintiff to increase the amount of programming provided each year. (*Id.*).  Because Plaintiff agreed to provide continuous programming to Defendants, Defendants thereby needed to store the programming they were receiving, or arrange for storage of the programming, in order for Plaintiff to successfully remain in compliance with Section 9(a).  As such, an implied contractual covenant exists that required Defendants to provide sufficient storage to accept the amount of programming content Plaintiff was obligated to produce.

Defendants argue that even if the storage requirement existed, they arranged for the storage of all the content that Plaintiff provided to it, but Plaintiff did not pay its storage fee or ever communicate to Defendants that it needed more storage. (MSJ 28:14–24).  Specifically, Defendants argue that "at [Defendants'] request, [Plaintiff] sent all of the programming to be exhibited . . . to an entity called Center City . . . [which] stored this programming." (*Id.* 28:18–21).  In support, Defendants provide testimony from Leslie Thomas ("Thomas"), Plaintiff's employee responsible for delivering Plaintiff's content to Defendants. (*See generally* Thomas Dep., Ex. 17 to MSJ, ECF No. 63).  Thomas testified that Plaintiff sent Center City its programming for Defendants, but she was unaware of whether Plaintiff paid its storage fee to Center City. (*Id.* 86:3–87:1).  Moreover, Thomas confirmed that Plaintiff never communicated to Center City that it needed more storage. (*Id.*).

The Court is not convinced by this evidence that there is an absence of a genuine issue of material fact regarding Defendants' implied duty to provide Plaintiff storage.  Indeed, Defendants arranged for the storage of Plaintiff's content, but it is unclear whether Plaintiff was aware that it needed to pay the storage fee, and whether the storage would increase each year pursuant to the Section 9 requirements.  Moreover, neither party presents evidence outside of depositions as to the storage's existence, sufficiency, or cost.

The only evidence the parties provide is Thomas's deposition in support of Defendants, and Bradley's declaration in support of Plaintiff. (Thomas Dep., Ex. 17 to MSJ, 86:3–87:1); (Bradley Decl. ¶ 49, ECF No. 70-1); (*see* Bradley Dep. Ex. 2 to MSJ, 147:2–149:12).  These witnesses' testimonies further bolster the issue of material fact regarding storage.  Accordingly, there is a genuine issue of fact as to whether Defendants provided sufficient storage to Plaintiff pursuant to the amount required to satisfy Section 9 of the Agreement, and Defendants' Motion regarding this claim is denied.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 63), is **GRANTED in part** and **DENIED in part**.  Specifically, the Court **GRANTS** summary judgment for Defendants on Plaintiff's breach of contract and breach of a consent decree claims.  However, the Court **DENIES** summary judgment on Plaintiff's breach of the implied covenant of good faith and fair dealing claim concerning the requirement that Defendants provide Plaintiff sufficient storage.  As such, Plaintiff's breach of the implied covenant of good faith and fair dealing claim concerning storage is the only surviving action of Plaintiff's SAC.

**IT IS FURTHER ORDERED** that the parties shall file a Proposed Joint Pretrial Order no later than thirty days after the issuance of this Order.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this _____3_____ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge